**Esther MALOBLOCKI, Appellant–Petitioner,**

v.

**Gene MALOBLOCKI, Appellee–Respondent.**

No. 45A05–9311–CV–405.

Court of Appeals of Indiana, Fifth District.

Feb. 6, 1995.

P. Jeffrey Schlesinger, Highland, for appellant.

James M. Kapitan, Thomas E. Rucinski, Sachs & Hess, P.C., Hammond, for appellee.

## OPINION

RUCKER, Judge.

In this dissolution action Esther Maloblocki (Mother) appeals the trial court's judgment awarding custody of the parties' minor son to Gene Maloblocki (Father). Mother also challenges the trial court's unequal distribution of the marital estate. We address the following rephrased issues:

1. Did the trial court abuse its discretion in awarding Father custody of the parties' minor child?

2. Did the trial court abuse its discretion in awarding Father a greater share of the marital assets?

3. Did the trial court err in denying Mother's request for attorney's fees?

4. Did the trial court err in not ordering reinstatement of Mother's maiden name?

We affirm in part and reverse in part.

Mother and Father were married in June 1973. One child, A.M., was born as a result of the marriage and was eleven years old at the time Mother filed her petition for dissolution in February, 1991. The parties' marital estate was modest, consisting primarily of the family residence.

Due to various continuances and other delays, the final hearing was not begun until July 22, 1992. Both parties sought custody, and each attempted to malign the other while emphasizing their own parenting skills. For example, Father testified that Mother disciplined A.M. by spanking him and that Mother possessed little tolerance with the child. Father also testified that he had once patiently worked with A.M. for a week to help the child prepare for a spelling test. On the other hand Mother testified that Father abused alcohol and lacked the compassion required of a custodial parent. Mother also testified that she cared about A.M.'s educational advancement and indicated that she had worked as a volunteer at A.M.'s school.

During the dissolution hearing the parties also disputed the division of the marital property. Father argued that he was entitled to a greater share of the marital assets because during the provisional period he had spent

$30,203.00 for joint marital debts and support for Mother and A.M. Father also contended that by paying the expenses of the marital home he essentially supported A.M.'s maternal grandmother who had moved into the home in October, 1991.

On July 21, 1993, a year after the final hearing, and more than two years after the Mother filed her petition, the trial court entered its dissolution decree. Father was awarded custody of the parties' minor son and Mother was awarded reasonable visitation. The trial court also awarded Father his employer-based profit sharing plan [1] and money held in his attorney's escrow account along with sixty percent of the net proceeds from the sale of the marital home. Mother received forty percent of the net proceeds from the sale of the marital residence. Both Mother and Father received various items of personal property along with their respective life insurance policies. This appeal ensued.

## I.

Mother first complains that a number of the trial court's findings justifying the custody award are unsupported by the evidence. For example, Mother correctly points out that Finding No. 15, which sets forth selected portions of a psychological evaluation report unfavorable to Mother, was not admitted into evidence. Mother also observes that Finding No. 15 along with many other findings not only were unsupported by evidence, but also extolled the virtues of Father while maligning Mother and depicting her in a very unfavorable light. Mother further complains that because the findings and conclusions were drafted by counsel for Father, the trial court erred in adopting them nearly verbatim.

Mother's complaint is not devoid of merit. It is true that there is no error where the trial court requests the parties to submit proposed findings and then adopts verbatim one party's proposed findings over those of the other party. *Dean v. Dean* (1982), Ind. App., 439 N.E.2d 1378; *see also* Ind.Trial Rule 52(C). However, it is equally true that

when a party prepares such findings he or she should take great care to insure that the findings are sufficient to form a proper factual basis for the ultimate conclusions of the trial court. *Dean,* 439 N.E.2d 1378. Also, the trial court should remember that when it signs one party's findings, it is ultimately responsible for their correctness. *Id.* As a part of effective advocacy counsel is expected to defend his or her client zealously within the bounds of law. However, the trial court should not clothe findings with the imprimatur of judicial approval where they are used as a vehicle to malign and castigate one party in favor of the other party. In the case before us we specifically disapprove of the language in the trial court's findings which unnecessarily maligns and castigates Mother.

Notwithstanding our disapproval of certain findings, Mother nonetheless cannot prevail on her challenge to the trial court's award of custody. We first observe that although the trial court directed both parties to submit proposed findings and conclusions, it did not do so pursuant to a request of either party under the provisions of Trial Rule 52(A). When findings and conclusions thereon are entered by the trial court upon request of any party to the action, our standard of review is two-tiered. First, we determine whether the evidence supports the findings, and second whether the findings support the judgment. *Flansburg v. Flansburg* (1991), Ind.App., 581 N.E.2d 430, *trans. denied; Justus v. Justus* (1991), Ind.App., 581 N.E.2d 1265, *trans. denied.* In that instance we are bound by the findings made by the trial court, and we will reverse where the findings are clearly erroneous, that is, where the findings are unsupported by the evidence. *Justus,* 581 N.E.2d at 1269; *Cornett v. Cornett* (1980), Ind.App., 412 N.E.2d 1232, *reh'g denied.* However, where, as here, the trial court enters findings and conclusions on its own motion, our standard of review is slightly altered. On those issues which the trial court has not found, or for which the findings are inadequate, we treat the judgment as a general one. *In re the*

---

1. Although the parties refer to Father's "pension plan," the record indicates that Father had an interest in an employer-based profit sharing plan and not a pension. In any event the inaccurate designation does not affect our decision.

*Marriage of Snemis* (1991), Ind.App., 575 N.E.2d 650. Thus, rather than being bound by the trial court's findings, or lack of them, we examine the record and affirm on any theory the evidence of record supports. *Id.* In so doing we neither weigh the evidence nor judge witness credibility, for that is particularly the function of the trial court. *In re Marriage of Saunders* (1986), Ind.App., 496 N.E.2d 419. Further, we will not disturb a trial court's determination regarding custody absent an abuse of discretion. *Schenk v. Schenk* (1991), Ind.App., 564 N.E.2d 973, *reh'g denied.*

■ Despite Mother's protest to the contrary the record does not support her contention that the trial court abused its discretion in awarding custody to Father. The record shows that following the filing of her petition for dissolution, Mother discouraged A.M. from visiting his father and made disparaging comments to A.M. about Father. Further, the record reveals that Mother maintains an erratic work schedule often requiring others to care for the parties' minor son. Despite her work schedule, Mother did not investigate options for A.M.'s care in her absence in the event she were awarded custody. In contrast, Father works during the day and is available to care for A.M. in the evenings and on weekends. At the final hearing Father testified that he had arranged for A.M.'s care during the day in the event the court were to award custody of A.M. to Father. In light of the foregoing evidence of record we cannot conclude the trial court abused its discretion on the issue of child custody.

## II.

■ Mother next complains of the trial court's distribution of the marital assets.[2] She contends that the court's reasons for an unequal distribution of property in Father's favor are inadequate. We agree.

A trial court's division of the marital estate is governed by Ind.Code § 31–1–11.5–11(c) which provides as follows:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of the children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

■ Subject to the statutory presumption that an even distribution of marital property is just and reasonable, the disposition of marital assets is committed to the sound discretion of the trial court. *Truman v. Truman* (1994), Ind.App., 642 N.E.2d 230. In the exercise of that discretion the trial court may divide the marital property unequally provided the court sets forth its reasons for so doing. *Euler v. Euler* (1989), Ind.App., 537 N.E.2d 554. However, where the reasons justifying an unequal distribution are clearly against the logic and effect of the

---

**2.** In her appellate brief, Mother attempts to assign values to personal property and automobiles to bolster her argument that a substantial disparity exists in the distribution of the marital property. However, the burden is on the parties to produce evidence of the value of the marital property at the dissolution hearing. *See e.g. Ross*

*v. Ross* (1994), Ind.App., 638 N.E.2d 1301, 1305; *In re Marriage of Larkin* (1984), Ind.App., 462 N.E.2d 1338, 1344; *In re Marriage of Church* (1981), Ind.App., 424 N.E.2d 1078, 1082, *trans. denied.* Because Mother did not place a value upon these assets during the dissolution hearing, she may not do so now.

facts and circumstances before the court, we will reverse. *Finch v. Finch* (1992), Ind. App., 592 N.E.2d 1260, 1261, *reh'g denied; see also R.E.G. v. L.M.G.* (1991), Ind.App., 571 N.E.2d 298, 304; *In re Marriage of Salas* (1983), Ind.App., 447 N.E.2d 1176, 1180.

 In this case the trial court awarded Father a greater share of the marital property partially to compensate him for "overpayment of support due to [Mother's] mother residing in the marital residence." *Record* at 102. The trial court additionally justified its unequal distribution on the bases that Father had provided the greatest amount of income during the marriage and that Father had expended substantial funds during the provisional period.

The record shows that Mother's mother lived in the marital residence for approximately nine months. Her presence apparently resulted in additional household expenses of approximately thirty dollars a months which Father paid. Awarding Father a greater share of the marital property to reimburse him for this minimal expense is clearly against the logic and effect of the facts and circumstances before the court. Thus, the trial court's unequal division of marital property cannot be sustained on this ground.

 Further, the unequal division is not justified on the basis that Father "provided the greatest percentage of the family income during the marriage [sic]." *Record* at 101. Without more this reason does not justify an unequal distribution of the marital estate. Indiana Code § 31–1–11.5–11(c) creates a presumption that an equal distribution of the marital property between the parties is just and reasonable. That presumption may be rebutted by a party who presents relevant evidence, including factors enumerated in the statute, that an equal distribution would not be just and reasonable. Marriage is to be considered a partnership in which profits are presumed to be shared equally even though one partner contributed more in income. *Seslar v. Seslar* (1991), Ind.App., 569 N.E.2d 380, 382–383, *opinion on reh'g,* 576 N.E.2d 1330. Certainly the contribution of one spouse "to the acquisition of [marital]

property" may be considered as a factor demonstrating that an equal distribution would not be just and reasonable. *See* I.C. § 31–1–11.5–11(c). However, there is no indication here why or how Father's greater income producing ability should affect the distribution of marital property.

The income-producing efforts and intangible contributions of both spouses unite to facilitate the acquisition of marital property. *See Seslar,* 569 N.E.2d 380; *Temple v. Temple* (1982), Ind.App., 435 N.E.2d 259, 262. Father's contribution of a greater share of funds to the marriage does not necessarily mean that he made a larger contribution to the acquisition of the marital property. Therefore, the trial court's unequal division of marital property cannot be sustained on the rationale that Father earned more income than mother during the marriage.

 Nor does the court's reasoning that Father expended considerable money during the provisional period justify an unequal distribution of the marital property. While we have previously held that in dividing marital property a court may consider temporary maintenance and joint marital debts paid by one spouse under a provisional order, *Fiste v. Fiste* (1994), Ind.App., 627 N.E.2d 1368, 1372; *Herron v. Herron* (1983), Ind.App., 457 N.E.2d 564, 567, the same is not true for child support. Child support is intended to provide support and maintenance for the parties' minor child. *Fiste v. Fiste* (1994), Ind.App., 627 N.E.2d 1368, 1373. Child support is held distinct from other accounts to protect the child's right to receive support. *Id. citing Jenkins v. Jenkins* (1991), Ind.App., 567 N.E.2d 136 (a debt in a property settlement may not be satisfied from an overpayment of child support).

The record reveals that Father expended $30,203.00 in paying joint marital debts and in supporting Mother and A.M. during the nearly three-year provisional period. However, the record does not indicate which portion of the $30,203.00 was expended as a part of child support. By entering a disparate property division based upon monies expended by Father during the provisional period, the trial court in essence allowed Father a

credit against the marital assets for his payment of child support. This is not a permissible basis for effecting an unequal division of the marital estate. *See Herron,* 457 N.E.2d 564; *Fiste,* 627 N.E.2d 1368.

The trial court's rationale does not rebut the statutory presumption that an equal division of property is just and reasonable. Therefore, we must reverse on this issue and remand with instructions that the trial court divide the marital property equally. *See R.E.G. v. L.M.G.* (1991), Ind.App., 571 N.E.2d 298, 306.

### III.

Mother next contends that the trial court abused its discretion in failing to order Father to pay her attorney's fees. Under I.C. § 31-1-11.5-16, the trial court *may* award attorney's fees at any stage of the dissolution proceeding. *Brown v. Brown* (1988), Ind.App., 519 N.E.2d 1259, 1262. The statute affords the trial court broad discretion in assessing attorney's fees, but does not mandate the trial court assess attorney fees in the first instance. *Id.* There is no abuse of discretion for the trial court not to do that which it is not required to do. *Id.; Rump v. Rump* (1988), Ind.App., 526 N.E.2d 1045, *trans. denied.*

### IV.

Finally, Mother claims that the trial court erred in failing to restore her maiden name. Pursuant to I.C. § 31-1-11.5-18, the trial court shall grant a woman's request for restoration of her maiden name upon entry of the decree of dissolution. However, "[a]ny woman desiring such name change shall set out the name she desires to be restored to her in her petition for dissolution as part of the relief sought." I.C. § 31-1-11.5-18. Mother's petition for dissolution did not request that the trial court restore her maiden name. The only indication by Mother that she desired a name change appears in her Proposed Findings of Fact and Conclusions of Law in which she indicates "Wife's former name of Zatarski should be restored." *Record* at 55. Because Mother did not properly request the trial court to change her name,

the trial court could not have erred in failing to do so.

Nonetheless Mother has made it evident now that she desires to have her maiden name restored. Because this relief was readily available to Mother under the provisions of I.C. § 31-1-11.5-18, we see no reason to deny Mother a name change based only upon her failure to request such relief properly. Thus, on remand we direct the court to modify its dissolution decree to provide that Esther Maloblocki's name be changed to Esther Zatarski.

This cause is remanded to the trial court for further proceedings consistent with this opinion. In all other respects the judgment of the trial court is affirmed.

SHARPNACK, C.J., and RILEY, J., concur.